ELDEN O. BORNEMAN, et als., *vs.* H. A. G. MILLIKEN, et als.

Lincoln. Opinion May 6, 1919.

*Rule of practice as to making and filing exceptions. Effect of record showing "exceptions filed and allowed." Rule as to allowance of exceptions where presiding Justice has become incapacitated. R. S., Chap. 82, Sec. 56, interpreted. General rule of practice as to facts in prior proceedings being considered res judicata where new trial has been granted for any cause.*

Where an entry of "exceptions filed and allowed" is made before the close of a term by consent of parties, the presentation of the bill of exceptions to the presiding Justice for his approval after the adjournment of the term will be considered as done as of the date of the entry.

Where an entry of "exceptions filed and allowed" has been made before the close of the term by consent of parties, and a bill of exceptions has been duly made up and presented to the presiding Justice, though after the adjournment of the term at which they were allowed, and before allowance the presiding Justice has become incapacitated for allowing them for any of the reasons assigned in Sec. 56 of Chap. 82, R. S., any Justice may upon motion and hearing allow them.

When a new trial is granted for any cause, the proceedings begin *de novo*, and no facts determined in the prior proceedings can be considered *res judicata*.

Action of trespass quare clausum. Defendant filed plea of general issue. To the ruling of presiding Justice directing verdict for defendant, plaintiff filed exceptions. Judgment in accordance with opinion.

Case stated in opinion.

*M. A. Johnson*, for plaintiff.

*A. S. Littlefield*, for defendant.

SITTING: SPEAR, HANSON, PHILBROOK, WILSON, DEASY, JJ.

WILSON, J. This case as now before this court presents two questions, first, whether the bill of exceptions of the plaintiffs to the ruling of the presiding Justice directing a verdict for the defendants is properly before this court, and second, whether it should be sustained.

The action was first tried at the April term, 1915, and resulted in a verdict for the plaintiffs against certain of the defendants. It was then taken to this court on motion for a new trial on the usual grounds, and a new trial was granted. 116 Maine, 76. A new trial was begun on the first day of the October term, 1917.

At the close of the second trial the presiding Justice, upon the ground that he felt his hands bound by the previous decision of this court above referred to, *pro forma,* as it were, ordered a verdict for the defendants.

To this ruling the plaintiffs seasonably excepted and before the close of the term, and presumably with the consent of all parties, to comply with the statute, Sec. 55, Chap. 82, R. S., an entry was made upon the docket of the court, "Exceptions filed and allowed." The effect of this entry under our practice and the decisions of this court must be construed to be that the presentation of a bill of exceptions after the close of the term shall by consent of parties be considered as presented as of the date of the docket entry. We think, therefore, the presentation of the bill of exceptions to the presiding Justice must be held in this case as having been duly made on the eighth day of the October term, 1917. *Dunn* v. *Motor Co.,* 92 Maine, 165; *Field* v. *Gellerson,* 80 Maine, 270.

When a bill of exceptions has been duly presented for allowance, but before allowance the Justice presiding at the trial becomes incapacitated for allowing them for any of the reasons assigned in Sec. 56, Chap. 82, R. S., any Justice may upon motion and hearing allow them. The bill of exceptions of the plaintiffs having been duly presented,—and it was in fact presented to the Justice presiding though not allowed by him owing to his death,—it was, we think, properly allowed by the Chief Justice under Sec. 56 of Chap. 82 above referred to, and is now before this court for consideration.

After consideration of the evidence now in the case we must sustain the exception. The presiding Justice at *nisi prius* evidently viewed the findings of fact by this court in the opinion handed down in the former case, 116 Maine, 76, as conclusive and binding. The finding as to the town line between Waldoboro and Warren, at least, so far as the same forms the county line between Lincoln and Knox County may be conclusive, *State* v. *Thompson,* 85 Maine, 194; but unless the facts fall under the head of those of which the court takes judicial notice, no findings of fact by the Law Court based upon evi-

dence in a case in which it sets aside the verdict can be considered *res judicata*. *Case* v. *Hoffman*, 100 Wis., 314. No issue of fact can be considered settled in a legal proceeding until a judgment is rendered thereon. *Lord* v. *Chadbourne*, 42 Maine, 429, 443.

A new trial being granted, the proceedings begin *de novo* so far as the determination of the facts are concerned. *State* v. *Verrill*, 54 Maine, 581, 583.

Considerable new evidence, at the second trial was introduced by the plaintiffs, and the contention of the plaintiffs now is, in effect: not that the so-called "old town line" between Waldoboro and Warren is the true town line, but that it was the point of starting when the deed was given from Waterman Thomas to Geoffrey Hoffses in 1779, and that by the long acquiescence at least of the abutting owners the so-called "old town line" has ever since been regarded as and is the easterly boundary of this property; that the westerly line of this property, which is the real issue in this case, was originally fixed by a birch tree and though said birch tree has disappeared through the ravages of time the western boundary has continued certain and fixed by long occupation and acquiescence of the owners on each side.

Evidence was introduced in the former case of a copy of an ancient plan of this section of the town of Waldoboro indicating that the property of John Labe next adjoining the line in dispute on the west extended no farther east than the adjoining property on the north, and the report and plan of the division of the property of Geoffrey Hoffses in 1811, which included the plaintiffs' property and the land now of one Payson adjoining on the north, the western line of which seems undisputed, and which plan tends to show that the distance across the property from east to west was the same from the north to the south boundaries, the property being divided into strips extending the entire length east and west, and the area in each case being in unvarying proportion to the width of each strip given in the report and on the plan. In addition to this and the other evidence of the former trial the plaintiffs in support of their contentions introduced at the last trial deeds of property lying easterly of the so-called "old town line" which tended to show an entirely different source of title from that of Geoffrey Hoffses. There was also evidence that the westerly line as claimed by the plaintiffs had been acquiesced in by the abutting owners for many years; Corpus Juris, Vol. 9, pages 244,

245; *Knowles* v. *Toothaker*, 58 Maine, 172; and also evidence that the land of the predecessors in title of the defendants originally began much farther to the west than the defendants' surveyor began to measure according to his testimony in the first trial, and that the distance named in the defendant Scott's deed along its northerly boundary was the distance along the original northerly line of the property known as the Jacob Labe property. With such other new evidence as was introduced by the plaintiffs at the last trial, additional weight is given to some of the evidence introduced at the first trial. We think the presiding Justice erred in not submitting all the evidence to the jury.

Entry should be:

*Motion to dismiss bill of*
*exceptions overruled.*
*Exception sustained.*